42. Upon information and belief, at Kien Huat's direction, Empire did not extend subscription rights to Plaintiff in the Rights Offering.

43. Empire further disclosed that "Kien Huat has agreed pursuant to a letter agreement, dated November 5, 2010, to exercise its entire allocation of basic subscription rights. Kien Huat may also, but has not agreed to and is not obligated to, exercise its oversubscription rights in the rights offering."

44. The Rights Offering also disclosed that Empire's "ability to continue as a going concern [was] dependent upon the consummation of the [Rights Offering]." Furthermore, in the event the Rights Offering was not completed by June 30, 2011, Empire disclosed that although the maturity date of the Kien Huat Loan would be extended to September 20, 2011, interest would accrue at a rate of 10% per annum, and there would be "no assurance that we will have funds available or be able to obtain a source of financing on terms acceptable to us, if at all, to satisfy any remaining unpaid principal outstanding under the [Kien Huat Loan] when due."

45. Upon information and belief, Kien Huat, through its domination and control, caused Empire's Board of Directors to approve the Rights Offering rather than suffer a feigned default under the Kien Huat Loan. As disclosed in Empire's SEC filings, such a default could jeopardize Empire's ability to continue as a "going concern."

46. The Rights Offering also disclosed that "[t]he exercise by Kien Huat of its basic subscription rights and oversubscription rights, to the extent exercised, will result in Kien Huat being able to continue to exercise substantial control over matters requiring stockholder approval upon completion of the offering."

47. The Rights Offering, which was extended in April 2011, was completed as of May 18, 2011. Upon information and belief, consistent with Kien Huat's apparent plan to obtain

control of Empire and its racing and gaming licenses, Kien Huat exercised the right to purchase in full, 19,826,382 shares of Empire common stock.

48. Empire's Schedule 13D, filed with the SEC, stated that "[a]s payment for the exercise of its rights, Kien Huat authorized the set off of $17,520,574 from the unpaid principal and accrued interest outstanding on the [Kien Huat Loan] previously disclosed in the Schedule D."

49. As a result of Kien Huat's exercise of subscription rights, its ownership interest in Empire increased from approximately 50.3% to 61.2% without further cash payment to Empire for that stock.

50. Despite a threatened delisting by NASDAQ for failure to maintain the minimum bid price of $1.00, upon information and belief on or about August 11, 2011, at Kien Huat's direction and as part of a *quid pro quo* of continued cooperation by Empire's senior executives, the Compensation Committee of Empire's Board of Directors recommended and the Board of Directors approved a "cash bonus plan for [its] senior executives" ("Cash Bonus Plan"). Pursuant to the Cash Bonus Plan, $300,000 USD was annually set aside for Empire's officers, including Mr. D'Amato who also serves on Empire's Board of Directors.

51. Then, shortly thereafter, as a result of Kien Huat's domination and control over Empire's Board of Directors and as further *quid pro quo* from Kien Huat, Empire agreed to amend Mr. D'Amato's "Amended and Restated Employment Agreement" providing him with certain additional benefits, including a housing allowance of $1,500 USD per month, an automobile allowance of up to $1,500 USD per month, and a life insurance policy valued at $3,000,000 USD.

## DEMAND UPON EMPIRE'S BOARD OF DIRECTORS WOULD BE FUTILE.

52. Plaintiff brings this action derivatively on behalf of Empire.

53. Upon information and belief, in or about August 2010, Plaintiff made a demand upon Empire's Board of Directors to take all necessary action to vindicate Empire's rights as to the improper disclosure of the Confidential Aqueduct Materials.

54. Upon information and belief, Empire's Board of Directors created a special committee in response to Plaintiff's demand ("Special Committee"), and the Special Committee retained counsel in connection therewith.

55. Upon information and belief, Empire thereafter rejected Plaintiff's demand. Plaintiff requested further information concerning Empire's rejection, including a copy of any report generated by or on behalf of the Special Committee. Empire denied that request.

56. A further demand would be futile and should be excused because, upon information and belief, (i) a majority of Empire's Board of Directors is personally interested in the transactions and/or lack independence from Defendant Kien Huat, and/or (ii) Empire's Board of Directors has failed to exercise sound business judgment in the performance of its duties and responsibilities.

57. Upon information and belief, Empire's Board of Directors lacks independence from Kien Huat and acts at the sole direction of Kien Huat.

58. Through its domination of and control over Empire and its Board of Directors, Kien Huat, Empire's controlling majority shareholder, largest creditor, and primary source of capital, has actively or constructively participated in the issuance of excessive shares of Empire stock to itself. Moreover, upon information and belief, Empire's Board of Directors has reason to deny Plaintiff's allegations, because certain Directors have received personal indirect benefits from the

additional shares issued to Kien Huat owing to their connection with Kien Huat or Kien Huat affiliates and, as such, constitute interested Directors.

59. Moreover, the actions of Empire's Board of Directors demonstrate a lack of sound business judgment. Certain of Empire's Directors and Kien Huat have benefitted directly and indirectly at the expense of Plaintiff and other minority shareholders by, inter alia, diluting their ownership and voting interests in Empire and taking actions directly conflicting with Empire's obligations under the Recapitalization Agreement between Plaintiff and Empire. For this reason, too, Plaintiff should be excused from making a further demand upon Empire's Board of Directors.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty
### (Derivative Claim On Behalf of Empire Against Defendant Kien Huat)

60. Plaintiff repeats and realleges Paragraphs 1 through 59 as if fully set forth herein.

61. Kien Huat, as majority shareholder of Empire, exercised control over Empire by virtue of its (i) majority ownership interest of Empire's common stock and (ii) right to appoint three (3) of Empire's six (6) Directors.

62. As a result of its control over Empire, Kien Huat is a fiduciary to Empire's minority shareholders, including Plaintiff, and therefore owed it and them a fiduciary duty.

63. Kien Huat breached its fiduciary duty to Plaintiff through its domination of and financial control over Empire, including by usurping Empire's corporate opportunities by, inter alia, providing the Confidential Aqueduct Materials to its affiliate, Genting New York LLC, and directing it to make a successful bid on the Aqueduct Project without Empire's participation.

64. As a direct and proximate result of the Kien Huat's breach of fiduciary duty, Empire has suffered monetary damages, greater than the jurisdictional amount of $75,000 but in an amount to be determined at trial, plus pre- and post-Judgment interest thereon.

65. Kien Huat's misconduct was intentional, willful, wanton, malicious, and of such egregious nature that punitive damages are appropriate in addition to any compensatory damages for harm done to Empire.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty
**(Derivative Claim On Behalf Of Empire For Breach of Fiduciary Duty Against Defendant Au)**

66. Plaintiff repeats and realleges Paragraphs 1 through 59 as if fully set forth herein.

67. The Members of Empire's Board of Directors, including Defendant Colin Au, owe fiduciary duties to Empire to act in Empire's best interests.

68. Defendant Au breached his fiduciary duty to Empire by providing the Confidential Aqueduct Materials to Kien Huat and Kien Huat's affiliate, Genting New York LLC, and aiding them in usurping that corporate opportunity from Empire.

69. As a direct and proximate result of beach of fiduciary duties by Defendant Au, Empire has suffered monetary damages, greater than the jurisdictional amount of $75,000 but in an amount to be determined at trial, plus pre- and post-Judgment interest thereon.

70. The misconduct of Defendant Au was intentional, willful, wanton, malicious, and of such egregious nature that punitive damages are appropriate in addition to any compensatory damages for harm done to Plaintiff.